## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**FRANCETTA GILBERT,**
                    **Plaintiff,**                    **Case No.:**


**v.**

**DENIS R. MCDONOUGH,** *Secretary*,
**DEPARTMENT OF VETERANS AFFAIRS,**
                    **Defendant.**
_____/


## COMPLAINT AND DEMAND FOR JURY TRIAL
## AND INJUNCTIVE RELIEF

Plaintiff, Francetta Gilbert, complains of Defendant, Denis R. McDonough,

Secretary of the Department of Veterans Affairs as follows:


## JURISDICTION

1.      This court has jurisdiction pursuant to Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e *et seq.*, including 42 U.S.C. 2000e-16 and Section 501 of the

Rehabilitation Act of 1973, 29 U. S. C. § 791 (Rehabilitation Act).

2.      Plaintiff has complied with all jurisdictional prerequisites to action under

Title VII of the Civil Rights Act of 1964, as amended, including having exhausted or

being excused of any required administrative remedies.

## PARTIES

1

3.　　C.W. Bill Young Healthcare System (Young VAHCS), formerly known as Bay Pines VA Healthcare System, is a Veterans Administration (VA) hospital and medical center with related services.　It is located in Bay Pines, Pinellas County, Florida. It is broken down into various services.　At all times material to the complaint, Plaintiff, Francetta Gilbert, has been employed as a Medical Records Technician at the Young VAHCS since October 2009.　Rosa Sly, Medical Records Administrator, is Plaintiff's first line supervisor, and has held this position since 2008. Patricia Bowman was the Chief of Health Information Managements Services ("HIMS"), and Plaintiff's second-line supervisor from October 5, 2015 until in or around the Fall of 2016. Plaintiff's second-line supervisor from Devona Hollingsworth was the Assistant Chief of HIMS, and was Plaintiff's second-line supervisor from October 2, 2016 to July 24, 2017.　Donna Griffin-Hall (Griffin-Hall) is the Chief of the entire Business Office Service and has held this position since June 2014.　Griffin-Hall is Plaintiff's Service Chief and she has overall managerial control of the service and strong influence over its operations.　Suzanne Klinker (Klinker) has been the Medical Director of the Young VAHCS from May 2012 to in or around the Fall of 2018.　　Kristine Brown (Brown) was the Associate Director of the Young VAHCS from 2007 to 2017 and was appointed to as the Deputy Director in October 2017. Brown remains in her position as the Deputy Director. Tatishka Musgrove-Thompson was and is the AFGE President for Local 548 office.　Barbara Thibodeau was a medical records technician in the ROI department from 2014 to 2016.　Loria Royer was a lead medical records

technician in the ROI department.  Charles Barron was a Compliance Officer within the Privacy Office.

4.     Each of the employees of the VA as described herein was employed by the Defendant and was acting within the course and scope of his or her employment with the Defendant at the time of the conduct described herein.  Each of the employees was there during the relevant times of this complaint.

5.     Plaintiff is a Black (Race), African-American (National Origin) female (Sex) with a disability. She is currently a GS-6, Step 8. Plaintiff has a mental disorder, to include not limited to Post Traumatic Stress Disorder ("PTSD"), which are conditions that prevents her from functioning normally.  She is a qualified person with a disability affecting one or more of her major life activities, such as thinking, memory, and being able to manage situation with multiple environmental stimuli to include noise and other distractions. Her impairments have caused Plaintiff to experience irritability and pervasive worry about multiple situations. Her symptoms result in difficulty with completing assignments and interacting with customers on a routine basis face to face. Her mental disorder, when exacerbated causes other medical conditions such as migraine headaches.   She is a service-connected disabled veteran. These impairments substantially limit her major life activity as they prevent or significantly restrict Plaintiff from performing the activity, compared to an average person in the general population.  Plaintiff has requested a reasonable accommodation repeatedly for these conditions.  She qualifies for a reasonable accommodation due to her disability.

6.     The Plaintiff's initial contact with ORM concerning the claims alleged in this complaint was on July 10, 2016. Plaintiff filed a formal EEO complaint, Agency Case No. 200I-0516-2016104230, EEO No. 510-2017-00291X, on August 11, 2016. Plaintiff received EEOC Administrative Appeal Decision on February 15, 2022.  More than 360 days have passed since the filing date, and she is within the 90-day time period to file a civil action, thus satisfying the jurisdictional requirements of 42 U.S.C. § 2000e-16(c).

7.     Plaintiff has satisfied all conditions precedent to filing of this suit or she has been prevented by the Defendant from satisfying such conditions precedent, or she is excused under the law from satisfying any other conditions.  Plaintiff has hired attorneys and agreed to pay a reasonable attorney fees.

### Pattern, Practice, Habit and Routine:  Retaliation

8.     The Defendant has engaged in harassment of employees and a pattern and practice of retaliation for engaging in Equal Employment Opportunity ("EEO") activity (i.e. requests for reasonable accommodations for disability), including against those opposing harassment, discrimination and retaliation, as well as, the filing of informal and formal EEO claims, participation in EEO activities, or participation as a witness on behalf of fellow employees' EEO claims for many years.  This retaliation for EEO activity went on throughout all material times of the instant complaint. In or about 2005 and 2006 Chief of Staff, George Van Buskirk (Van Buskirk) and Director Wallace Hopkins (Hopkins) created a scheme to retaliate against employees who

engaged in EEO activity including efforts to destroy their careers and reputations.  See *Gowski v. Peake,* 682 F.3d 1299 (11th Cir 2012). Brown worked closely with Van Buskirk and then with Hopkins.  Brown has made statements reflecting animosity to EEO activity and to black managers.  She has also taken actions showing retaliatory and discriminatory animus. In addition, Brown's denials of race as a motivating factor for discrimination have been contradicted by admissions made by Griffin-Hall about Brown's articulated negative feelings about black managers.  She has directed a supervisor not to hire an employee from the Palo Alto VA facility because she engaged in EEO activity.  Her denials of that were rejected by an administrative judge after a hearing in which the employee prevailed on a retaliation complaint in which Brown was the principal responsible management official (RMO). Actions and statements regarding discrimination and retaliation include her historic association with Young VAHCS's (Bay Pines) retaliation scheme involving, *inter alia,* Sabrina Patrick (black), the *Cote* case, Case No. 8:07-cv-01524-T-TBM litigated in Federal District Court in Tampa, and upheld in *Gowski, supra,* which ended up as a multimillion-dollar verdict against the Department of Veterans Affairs, as well as in several other cases involving VA employees.

9.     Numerous Bay Pines employees have been retaliated against for engaging in EEO and other protected activity such as request for reasonable accommodation for disabilities, including, *inter alia*, Patrick, Gowski, Cote, Dr. Sally Zachariah, Dr. Jacques Durr, Dr. Valpersia Gainers-Hasugluw, Ms. Roxanne Lainhart-Bronner, Dr. Selim Elzayat, Ms. Pamela Trimble, Dr. Michel Vandormael,

Dr. David Johnson, Dr. Lynn Anderson, Mathis Dudley, Dr. Todd Kaleel, Ann Spackman, Aldona Sich, Kathleen Reilly, Mary Mells, Noris Babb, Paul Jones, Michael Corcoran, Jason Atkinson, Walter Slam, Darin Oakes, Matthew Gustin, Thomas Jaquis, Kendra DiMaria, Chad DiMaria, Tim Torain, Christopher Walz, Rosa Sly and Devona Hollingsworth. Such retaliation included, by way of example, various acts to harm an employee's reputation and career, various types of discipline and proposed discipline, including termination, suspension, reprimand and counseling; denying leadership positions; changing duties and office assignments; seeking information to discipline and terminate employees; seeking out employees to assist in gathering derogatory information about employees, including the solicitation of reports of contact, which are written complaints by one employee against another and are sometimes used as a basis for steps in discipline; using means designed to create a record to justify using their retaliatory animus such as subjecting employees to inappropriate fitness for duty exams; improperly placing employees on performance improvement plans; subjecting employees to lower evaluations, inappropriate pay and bonuses and increasingly higher levels of discipline up to suspension without pay and termination; taking actions to impair employee's ability to do their job; failing to fill positions; and taking other action designed to create backlogs or other problems which are then blamed upon the targeted employee. Retaliators would frequently remove employees from committees; reduce or limit physician's medical privileges and credentialing or other employees' responsibilities and authorizations; and use committees or created "independent decision makers" to insulate the administrators

from appearing to have engaged in discriminatory or retaliatory conduct, including creating Administrative Investigative Boards ("AIBs") and involving VA programs to examine problems within a service and use them to assist in management efforts to retaliate against employees and to cover up improper conduct and the failure to follow required procedural requirements for adverse or disciplinary actions.   In some retaliation cases, other employees or managers strategically asserted or filed EEOs against the real victim.

10.   As part of the pattern, practice and culture of retaliation and hostile retaliatory work environment, various administrators, managers and supervisors at Young VAHCS (formerly Bay Pines), including Brown and Griffin-Hall have developed and maintained a reputation for retaliation against those who engage in EEO activity or do not join in their efforts to insulate their management style.  As a result of the pattern, practice and culture of retaliation and hostile retaliatory work environment, a fear of retaliation has developed at Young VAHCS.  As a result, a number of very good employees are afraid to come forward with information they have concerning discriminatory or retaliatory conduct and a number of very good employees have chosen to leave Young VAHCS or have been pushed out.

11.   As part of the pattern, practice and culture of retaliation and hostile retaliatory work environment, concerns about retaliation are ignored, not investigated and not properly reported or disciplined.

12.   By way of example, in relation to the management officials in Plaintiff's service, in 2012, a Young VAHCS employee, Mary Mells, applied for a position which

involved her experience and expertise for many years in which she had been rated outstanding in her performance.  She filed an EEO claim based on her race (Black). Plaintiff's first line supervisor, Rosa Sly (Sly) submitted an affidavit in Mells' case in 2013.  In that affidavit, Sly pointed out she had been the victim of discrimination as a black attempting to advance in the Business Office whose Service Chief at that time was Jason Waldrop, and who was under the direct supervision of Brown.  Sly, who had been an "Employee of the Year" was passed over for a position given to a young, white female despite Sly having more experience in the area. That case was resolved with Sly becoming the first black in the Business Office to be given a GS-11 grade. Nevertheless, she was given that grade in the position she had historically had.  In 2013, Sly submitted an affidavit concerning that in Mells' case in which Brown was the RMO.  In 2015, Sly was identified in Rule 26 disclosures as having information from Griffin-Hall about hostility to black managers (May 26, 2015).  In June 2015 Sly submitted a second affidavit in Mells' case reflecting the fact that she had been told by Griffin-Hall in mid-February 2015 that Griffin-Hall:

> "…was upset and mentioned to me that she had received a fully successful on her performance evaluation that was given her by the Associate Director Kris Brown.  Mrs. Griffin-Hall stated, "I can't believe that she would give me a fully successful."  They took me out of my current position for 18 months and had me sit over in Quality Assurance doing absolutely nothing and I was given an excellent rating for the 18 months that I was there, Griffin-Hall states.  I asked (Kris) how is it that when I'm put over the Business Office Service for six months I'm rated fully successfully."" She said that she did not agree with her rating and that she was requesting to see the Director, Suzanne Klinker.  Mrs. Griffin-Hall also stated she informed Kris Brown that there is no way that she would be accepted in any leadership program with having received a fully successful rating.  She also stated to me

that "you know, Kris has a problem with black employees being in higher positions."  Mrs. Griffin-Hall stated that she was reminded by Kris Brown prior to hiring her Assistant Chief, Denise Williams, (black employee), that you know she's "black".  Mrs. Griffin-Hall stated, "I asked Kris what does that have to do with anything?" Mrs. Griffin-Hall stated, Kris replied, "you just have to be careful in hiring too many blacks in your area."

13.    Subsequently, Griffin-Hall filed an affidavit defending Brown. Continuing into 2015 through present, upper management has enhanced harassment of Sly.

14.    In 2016, Devona Hollingsworth (Black) was hired from the military as the Assistant Chief in HIMS, making her Plaintiff's second-line supervisor.  When Griffin-Hall found out she complained.  Subsequently, Hollingsworth complained about Griffin-Hall's treatment of Sly and other employees.  Hollingsworth was harassed by Griffin-Hall for EEO and USERRA activity, resulting in Hollingworth filing her own EEO and USERRA claims against Griffin-Hall.  Brown investigated the EEO claims at the informal stage in late 2016 and did not correct Griffin-Hall. Hollingsworth was placed on active duty by the military on March 15, 2017.  Despite the fact that, under 50 USC § 3936(a), no actions could be taken against Hollingworth, while on active duty, Griffin-Hall improperly terminated her on July 24, 2017.

15.    Sly on numerous occasions reported Griffin-Hall's harassment to Brown and Klinker.  After she started, Hollingsworth opposed discrimination and the hostile work environment being created for Sly. Griffin-Hall began harassing and creating a hostile work environment for Hollingsworth.  When she complained to Brown and to Klinker, Brown did nothing to address problems and Klinker would refer complaints

back to Brown.  As in Plaintiff's instant case, Plaintiff, Francetta Gilbert, reported the same concerns of Griffin-Hall creating a harassing and hostile work environment for her.  Plaintiff's complaints, along with Sly's complaints remained unresolved.  This ultimately resulted in Sly filing her own EEO complaints against the Defendant, naming Griffin-Hall as one of the responsible management officials involved.  Griffin-Hall continued to create a hostile work environment, preventing Sly from performing her duties as Plaintiff's first-line supervisor; openly criticizing her in front of her staff, including Plaintiff, undermining her abilities as a supervisor, such as taking disciplinary action against employees without Sly's input or knowledge, and meeting with Sly's staff and changing work assignments without Sly's input or knowledge.

16.    Such conduct and omissions, as well as other conduct not listed here, reflect a continuing disregard of the civil rights laws and rules concerning retaliation, serve to intimidate, cause fear of retaliation, cause fear that retaliation will not be addressed and will be tolerated at Young VAHCS, and maintain and further the culture of retaliation and retaliatory hostile work environment.

## **GENERAL ALLEGATIONS**
### **Disability Discrimination, Reprisal for Protected EEO Activity and Hostile Work Environment/Harassment**

17.    Plaintiff has been subjected to disparate treatment, a hostile work environment/harassment and discrimination based upon her disability and reprisal for protected EEO activity, which includes reprisal for requesting reasonable accommodation, as follows:

a.   Since March 2014, the Defendant has failed to provide and/or unreasonably delayed providing Plaintiff a reasonable accommodation for her disabilities.  The Defendant has subjected Plaintiff to a harassing and hostile work environment, subjecting her to heightened scrutiny, unfair and biased adverse employment action, and exacerbating her disability symptoms.

b.   Plaintiff has been working as a Medical Records Technician in the Release of Information department since 2009. As part of her job duties, she is required to review and process a variety of release requests for confidential information from the patient's medical and administrative record. She is expected to have interactions both written and verbal with a variety of individuals, including, but not limited to, patients, staff, attorneys, insurance companies, congressional staff, and Regional Counsel.  Plaintiff also is responsible for transcription, ensuring that all notes dictated by the doctors are entered into the patients' records correctly and in a timely fashion.

c.   After learning of her mental disorder diagnosis, Plaintiff engaged in her first protected activity when she submitted her request for a reasonable accommodation (hereinafter "RA") on March 17, 2014.  She first discussed her need for a RA with then Chief of the Business Office, Jason Waldrop.  This triggered the start of the interactive process between the Plaintiff and the Defendant regarding her request for RA. Plaintiff's disability included her suffering from anxiety/unspecified anxiety as a result of her service in the military serving in combat deployments in both Kuwait and Iraq. Her work environment worsened

her condition, causing her to experience irritability, pervasive worrying about multiple situations, and migraine headaches, resulting in her having difficulty completing assignments and interacting with customers face-to-face on a routine basis.  Plaintiff's workspace was located in an open concept floorplan with multiple employee cubicles, and then after the waiting room for the patients was moved from down the hall, to directly into the ROI department workspace with the employees, the work environment changed for the Plaintiff and resulted in her need for a RA.   Plaintiff would be able to perform her essential job duties satisfactorily with a reasonable accommodation.

d.    In April 2014, Senior Human Resources (HR) Specialist, Heather Nichol (Nichol), was assigned to process Plaintiff's request for reasonable accommodation ("RA").   Nichol was designated as the Local Regional Accommodation Coordinator (LRAC) with the responsibility of determining whether Plaintiff was a qualified person with a disability and, to be involved in the interactive process.

e.    Plaintiff's medical provider submitted the required medical documentation requested by the Defendant on April 16, 2014.  Her medical provider recommended that Plaintiff be placed in a work environment with limited noise and distractions, and where a majority of assignments were individual or solitary projects.

f.    Plaintiff was determined to be a qualified person with a disability.

g.    Beginning in or around late Summer 2014, Plaintiff's first-line supervisor, Rosa Sly (hereinafter "Sly"), provided Plaintiff with a partial temporary workplace adjustment ("TWA") or otherwise referred to as an interim workplace adjustment, while she awaited a final decision on her request for RA.  This partial temporary workplace adjustment allowed Plaintiff to remain in her same position, but her front desk rotation duties were removed and replaced with transcription duties.  Sly also agreed that Plaintiff's customer service component of her job duties could be satisfied by her doing customer service over the phone. Although Plaintiff was placed in this partial TWA by her immediate supervisor, Sly, the outstanding request for Plaintiff to have a work environment with limited noise and distractions, was still unresolved as a result of the new Service Chief, Griffin-Hall, refusing to approve this change as a permanent reasonable accommodation.

h.    As part of the interactive process, the LRAC is responsible for, among many other things, to assist supervisors and management officials at all levels with processing requests for RA; consult with EEO Offices, Office of Diversity and Inclusion, Office of Information Technology, Computer Assistance Program, the Job Accommodations Network (www.askjan.org), or other resources to identify RA options, if need; track and report all requests for RA and the disposition of those requests by using the Reasonable Accommodation Compliance System (RACS); the LRAC will review with the Designated Management Official (DMO) and the requesting employee, the functional limitations of the employee and identify possible reasonable accommodations that will enable the employee to

perform the essential function if the position; and consider reassignment of the employee only as a last resort and if there is no accommodation available that would enable the employee to perform the essential functions of her current job, and the employee has a permanent or long-term disability.   .

i.    From March 2014 to October 2014, Senior Human Resources (HR) Specialist, Nichol, did not engage in the interactive process with management and Plaintiff, in violation of the Rehabilitation Act of 1973, as amended.  Nichols made no effort to find a suitable position and/or location for Plaintiff that met her disability needs, even despite knowing Plaintiff was only in a temporary work place adjustment. The Defendant failed to engage in the interactive process in violation of the Rehabilitation Act of 1973.

j.    Under the Rehabilitation Act there are only three possible alternatives, approval, denial or approval with modification. None of those determinations were made during the prescribed time.  Plaintiff had a clear right to have those determinations made. The defendant violated its duties under the Rehabilitation Act.  Per VA policy, all requests for accommodation should be processed as quickly as possible, but processed completely within thirty (30) calendar days, not counting the time waiting for medical documentation.  In Plaintiff's circumstance, far greater time had elapsed than 30 days, and her request for RA could have easily been provided since Sly had temporarily adjusted her work duties and there were vacant office spaces Plaintiff could have been given.  When a disability is known and the accommodation can be easily provided, failure to process the accommodation

request quickly could constitute undue delay which is a violation of the Rehabilitation Act.

k.    After not receiving any updates from Nichols, Plaintiff followed up again on September 4, 2014 requesting that Nichol continue looking for a suitable position and/or location that met her disability needs.

l.    Close to a month later Nichol responded to Plaintiff, on October 2, 2014, and advised Plaintiff her RA request had been placed on hold since she was working in the Transcription section of ROI.[1] Nichol advised Plaintiff that since the position was being removed from the ROI section[2] per Griffin-Hall, Plaintiff could either re-engage in the RA process or return back to her full duties in the ROI section. Plaintiff immediately reiterated to Nichol that she wished to have her initial RA request processed and would wait for an update from Nichol as it pertained to finding her a suitable position and/or location that met her disability needs.

m.    On October 3, 2014, Nichol agreed to look for a position for ninety (90) days, however it became evident that Nichol made no such effort to find Plaintiff a permanent reasonable accommodation position and/or location during that time.

n.    On December 1, 2014, Plaintiff followed up again with Nichol reiterating that she wished to continue pursuing her request for RA and that she had no plans to rescind her request.

---

[1] Plaintiff's transcription duties were only as part of a TWA, not as a permanent RA.
[2] The transcription department did not move services until approximately March 2022.

o.     On or around February 4, 2015, Chief of the Business Office Service, Donna Griffin-Hall advised she could offer the Plaintiff only one position, that which was a Program Support Clerk, GS-5, position, which was a grade level lower than Plaintiff's current position. This downgraded job offer was extended to Plaintiff by Nichol on February 6, 2015.

p.     Plaintiff continued her efforts to engage in the "interactive process," (although one sided) and advised Nichol that she would be meeting with her Union Representative on February 20, 2015 to discuss the job offer.  Plaintiff also inquired of Nichol on February 19, 2015 as to approximately twenty-three (23) additional jobs coming available that which she would qualify for. Nichol affirmed that she would inquire of Griffin-Hall regarding those jobs and would get back to her.

q.     On February 27, 2015, Plaintiff met with Griffin-Hall, Nichol, Assistant Chief of Human Resources, Cecil Johnson, and AFGE Union Representative, Tatishka Musgrove-Thompson, regarding Plaintiff's request for RA.  During that meeting, Griffin-Hall offered Plaintiff an equivalent position to her current role that was off-site. All parties were in agreement with this offer for off-site position.

r.     On or about March 4, 2015, Union Representative, Musgrove-Thompson requested that management permit Plaintiff to utilize as her workspace, one of the 3 vacant[3] offices within the ROI department.

---

[3] These offices remained empty for several years prior to this request, and remained vacant during the relevant time period involved in this case.

s.     Shortly after the February 27th meeting, Griffin-Hall rescinded both the offer of the off-site position and the downgraded position as a Program Support Clerk.  Griffin-Hall advised Nichol she could not accommodate Plaintiff at all, and denied any knowledge of any other upcoming open positions.

t.     On May 29, 2015, almost two months after Plaintiff's request to be placed in one of the vacant offices in ROI as a permanent RA, Griffin-Hall denied her request without justification.

u.     Subsequent to the filing of her RA and engaging in protected activity, and Griffin-Hall becoming the Chief of the Business Office, Plaintiff began to experience disparate treatment and subjected to a harassing and hostile work environment.

v.     Griffin-Hall not only was continually denied Plaintiff's requests for RA, but she began subjecting Plaintiff to heightened scrutiny of her work performance. Despite the fact Griffin-Hall was not Plaintiff's first-line supervisor, she would ignore the proper chain of command and surpass Plaintiff's first-line supervisor, Sly, and go straight to Plaintiff, repeatedly making demands and asking for the same request multiple times a day. In addition, she continually harassed Plaintiff about a missing authorization that was not in Plaintiff's possession and was locked in a room that which Griffin-Hall was the only one with access to.

w.     On October 6, 2015, Griffin-Hall accused Plaintiff of accessing someone else's with the same last name as Plaintiff without authorization.  Griffin-Hall immediately denied Plaintiff computer access without a proper investigation in accordance with VA policy from October 6-8, 2015. Griffin-Hall did not discuss

this with Plaintiff's first-line supervisor, Sly, prior to cutting Plaintiff's computer access.  It was later determined that Sly had given Plaintiff the request that authorized Plaintiff's access to the file.  Griffin-Hall did not treat other employees this way who were not disabled.  Griffin-Hall has a reputation of refusing to accommodate individuals with disabilities and/or that have engaged in protected EEO activity. She has a history of being hostile toward individuals that requested reasonable accommodations in the Health Administration Services (HAS) Department, where she was assigned prior to her transfer to the Business Office Service.

x.    Griffin-Hall's disparate treatment of Plaintiff, hostile demeanor, and continued denial in providing Plaintiff with a reasonable accommodation, worsened the symptoms of Plaintiff's disability.  Her anxiety, as a result, caused her to experience irritability, pervasive worrying about multiple situations, and migraine headaches, resulting in her having difficulty completing assignments and interacting with individuals face-to-face on a routine basis. Plaintiff reported her concerns to her immediate supervisor, Sly, Union Representative, Musgrove-Thompson, and upper management.

y.    A few months after, Sly provided Plaintiff with a TWA, removing her front desk duties, Plaintiff began being harassed by a co-worker, Barbara Thibodeau.  Thibodeau began making rude comments to Plaintiff, and told Plaintiff her job was easy. Thibodeau continued to make fun of Plaintiff, commenting that Plaintiff's job was not as hard as the other staff because Plaintiff

did not have to work the front desk because of her disability. In addition, when Thibodeau would pass Plaintiff in the office, she would intentionally bump into Plaintiff repeatedly with her breast. Plaintiff reported these incidents to management, including BOS Chief, Griffin-Hall, however to no avail, as Thibodeau continued these behaviors and was never disciplined.

z.     On January 25, 2016, Plaintiff experienced yet another harassing encounter with Thibodeau. Plaintiff immediately reported this to management, including upper management officials Griffin-Hall, Brown and Klinker.

aa.    Close to three weeks later, on February 17, 2016, Griffin-Hall notified Plaintiff that Fact-Finding investigation was being conducted regarding the January 25, 2016 incident. Griffin-Hall immediately detailed Plaintiff to a vacant office in ROI and instructed her to have no contact with the ROI staff until further notice.

bb.    During the time Plaintiff was detailed, on March 24, 2016, Thibodeau continued to harass and taunt Plaintiff by making grunting noises and various facial expressions at her. Plaintiff again immediately reported this to management in a report of contact. No action was taken against Thibodeau.

cc.    On April 5, 2016 the Fact-Finding Investigation was completed. The assigned fact-finder, Charles Barron, conducted interviews of witnesses and noted that there were several discrepancies in the police report filed regarding the incident, and noted that a Report of Contact from a direct witness, Dorothy Birge, described Thibodeau as the aggressor towards Plaintiff. Plaintiff expressed to management and Barron that she felt she was being targeted and harassed because of her

disability and her request for reasonable accommodation. She reported to upper management that she felt Griffin-Hall was targeting her because of her protected activity and regarding her disability and that she wanted to push Plaintiff out.

dd. On April 21, 2016, Griffin-Hall issued Plaintiff a Memorandum informing her that the Fact-Finding Investigation was complete and there may be disciplinary action taken. Thibodeau was never disciplined for any of the reported the incidents, including the January 25, 2016 incident, however Plaintiff remained detailed from her previous workstation.

ee. On July 1, 2016, ignoring the proper supervisory chain, Griffin-Hall surpassed Sly, Plaintiff's direct supervisor, and inquired about a missing request. Plaintiff advised Griffin-Hall that she would look into the missing request and address it. Plaintiff discovered that the request in question was one Plaintiff had previously placed in her office under lock and key, and was missing. Griffin-Hall was the only other person that had a key to Plaintiff's office. Nonetheless, Plaintiff was able to retrieve another copy of the request and submitted it. Griffin-Hall repeatedly harassed Plaintiff about the same missing request several times in the same day and July 5 and 6th, despite the fact Plaintiff had already completed and submitted the request.

ff. On July 10, 2016, Plaintiff's filed her informal EEO complaint with ORM regarding the discriminatory and retaliatory actions being taken against her and the continued harassing and hostile work environment she was being subjected to.

gg.     On August 3, 2016, the morning of Plaintiff's scheduled mediation in ORM Case No. 200I-0516-2016104230, EEO Case No. 510-2017-00291X that both she and Griffin-Hall were scheduled to attend, Griffin-Hall accused Plaintiff again of losing a request. Griffin-Hall aggressively approached Plaintiff and accused her of not submitting it properly and aggressively dictated the first and last name for the request for medical records.  Griffin-Hall did not provide any identifiers, such as the date of birth or social security number, that are typically provided by management when requesting that a request for medical records be located. Plaintiff advised Griffin-Hall that she previously submitted the request for medical records. Plaintiff immediately reported her concerns regarding Griffin-Halls accusations to Sly. Sly located the request within the hour and it was determined Plaintiff submitted it properly.  It was clear that Griffin-Hall was intending to harass, bully and intimidate Plaintiff, just hours away from her mediation, in an attempt to exacerbate Plaintiff's disability symptoms and thwart mediation. Plaintiff reported this incident to her supervisors and requested that Griffin-Hall approach her with another staff member and/or her union representative.

hh.     On August 11, 2016, Plaintiff filed her formal EEO complaint, Agency Case No. 200I-0516-2016104230, EEO No. 510-2017-00291X, naming Griffin-Hall as the Responding Management Official (RMO).

ii.     On October 17, 2016, Griffin-Hall told Human Resources (HR) not to continue processing Plaintiff's request for RA and withdrew Plaintiff's request for RA. That same day, Griffin-Hall issued Plaintiff a Memorandum changing her

working conditions and ordered her immediate return to the ROI section. This decision again was made without seeking any input from Plaintiff's immediate supervisor, Sly.

jj.     On or around October 19, 2016, in violation of the Rehabilitation Act and of Agency policy, the Defendant requested Plaintiff to re-submit her request for RA along with supporting medical documentation. Plaintiff advised management that she did not believe she was required to resubmit a request for RA when she had requested one already and never rescinded that request, however, nonetheless, Plaintiff re-submitted the requested documentation that same day.

kk.     On the October 23, 2016, Griffin-Hall issued Plaintiff a Proposed Suspension, accusing her of privacy violations that allegedly occurred in March and April of 2016 and for alleged disruptive behavior regarding the January 25, 2016 incident that the fact-finding was conducted on. The Charge Specifications in the Proposed Suspension were false and unsubstantiated by record evidence. The Evidence File was compiled by Griffin-Hall and presented to Brown. The Evidence File was incomplete and did not include pertinent documents and information that would have cleared Plaintiff's name.

ll.     The Defendant repeatedly refused to provide Plaintiff with the evidence file prior to her submitting her Response to the Proposed Suspension. This was in violation of Plaintiff's due process rights according to VA policy. It was clear to Plaintiff that Griffin-Hall and Kris Brown was targeting her and treating her different than other employees who had not engaged in protected activity and/or

were not disabled.

mm.   Up until this point, Plaintiff had an exemplary disciplinary and performance record during her employment with the Defendant since 2009. The allegations brought against Plaintiff in the Proposed Suspension were contrary to her everyday performance, which has been recognized by her first-line supervisor, Sly, as "exceptional" in the areas of accuracy, customer service, and confidentiality. Furthermore, Plaintiff was the only individual in her department who was disciplined in such a harsh manner for privacy violations that were committed by other colleagues of a different protected class than Plaintiff, that were similar or more severe than the alleged violations committed by Plaintiff. Griffin-Hall targeted Plaintiff and disciplined her in an inconsistent manner compared to how she treats other staff in the department. She detailed Plaintiff out of the ROI department immediately when she initiated the fact-finding and took no action against Thibodeau for her behaviors. Despite the fact-finding investigation concluding on or about April 5, 2016, with Barron noting that an eye witness described Thibodeau as the aggressor, Plaintiff had remained detailed for over nine (9) months prior to Griffin-Hall bring this Proposed Suspension against her for the incident. This is contrary to the practice and procedures of the Agency regarding fact-findings investigations and disciplinary actions.

nn.   On October 25, 2016, AFGE Union Vice President, Pamela Burrell-Tomlinson, submitted a Demand to Bargain to Griffin-Hall regarding Plaintiff's change in working conditions. The Demand outlined that Plaintiff was detailed to

a vacant office due to a fact-finding and then reasonably accommodated within the service to stay in the same office. The Demand was for Plaintiff to maintain working in that vacant office space in order to satisfy her RA needs.

oo.     On November 2, 2016, Griffin-Hall issued a Response to the Demand to Bargain and denied knowledge of any internal agreements for Plaintiff to remain indefinitely in the vacant office space. In addition, she stated that she agreed for Plaintiff to remain in the space until a selection was made for the position under recruitment and during this period the AFGE with monitor the Reasonable Accommodation Office's efforts to provide an official accommodation for Plaintiff.

pp.     Seven months after Griffin-Hall issued Plaintiff the Proposed Suspension, Kris Brown sustained the Proposed Suspension and placed Plaintiff on a two-week Suspension without pay on May 2, 2017.

qq.     The Defendant continued to delay/deny the processing of Plaintiff's RA request since 2014 and ultimately, it was not until May 2017 that the Plaintiff's request for reasonable accommodation was approved.[4]  Plaintiff was placed in one of the vacant offices in the ROI department, that she had requested from the beginning and has remained in that office to date.  This fact demonstrates that the Defendant discriminated and retaliated against Plaintiff by intentionally delaying/denying Plaintiff a RA.  As a result of this discrimination and retaliation

---

[4] Plaintiff was informed on May 11, 2022 that the Agency conducted a thorough search for Plaintiff's RA records, however, were unable to find relevant document.  On March 31, 2022, Chief of VISN 8 Reasonable Accommodation, James Leafgreen, instructed Plaintiff to resubmit her RA documentation.

by Defendant, Plaintiff has suffered unwarranted adverse disciplinary and employment actions, loss of pay, loss of promotional opportunity and/or job advancement, a diminished professional reputation, and her mental disorder and symptoms have increasingly worsened.

### COUNT I
### Disability Discrimination and Failure to Provide/ Unreasonably Delay Reasonable Accommodation

18.    Plaintiff sues Defendant, Denis R. McDonough, Secretary of the Department of Veterans Affairs for disability discrimination and failure to reasonably accommodate and/or unreasonably delaying providing a reasonable accommodation under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 (Rehabilitation Act) and Section 717 of the Civil Rights Act of 1964, as amended.

19.    Plaintiff incorporates and realleges paragraphs 1 through 17.

20.    Plaintiff had a disability. Plaintiff was a qualified individual. The Defendant knew of the Plaintiff's disability.

21.    Plaintiff requested an accommodation. A reasonable accommodation existed that would have allowed the Plaintiff to perform essential functions of the job.

22.    The Defendant unreasonably delayed a reasonable accommodation. The Defendant failed to reasonably accommodate Plaintiff.

23.    As a direct and proximate result of the foregoing conduct, Plaintiff has been denied equal employment opportunity for wages, promotion, and other terms

and conditions of employment by the Defendant because of disability discrimination and failure to reasonably accommodate disability.

24.     The above-referenced actions have created an intolerable hostile work environment. The Defendant at all relevant times knew, or should have known, of the above-referenced discrimination against Plaintiff.

25.     The Defendant has failed to take necessary action to prevent or correct the complaint of discrimination and, in fact, ratified such conduct.

26.     The Defendant, through Plaintiff's managers and supervisors has engaged in, directed or ratified conduct and denied and frustrated Plaintiff's efforts to obtain relief under Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 (Rehabilitation Act) and Section 717 of the Civil Rights Act of 1964, as amended.

27.     The Defendant, through acceptance of the complained of conduct, has fostered an attitude among supervisors at Young VAHCS in Bay Pines, Florida that disability discrimination and failure to reasonably accommodate disability, and/or unduly delaying a reasonable accommodation for a disability are acceptable employment practices.

28.     Because of the actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, Plaintiff has been and continues to be denied her rights to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Rehabilitation Act.

29.     As a result of the foregoing, Plaintiff has been damaged. Those damages include, loss of pay, loss of a non-hostile working environment; loss of career and

professional opportunities; payment of attorneys' fees and legal costs; harm to her professional reputation; adverse disciplinary action; and humiliation, degradation, embarrassment, severe emotional distress and aggravation of her medical conditions. Plaintiff will continue in the future to suffer these damages absent relief from this Court.

WHEREFORE, Plaintiff requests reasonable accommodation, prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

**COUNT II**
**Retaliation**

30.    Plaintiff sues Defendant, Denis R. McDonough, Secretary of the Department of Veterans Affairs for retaliation under Title VII and the Rehabilitation Act.

31.    Plaintiff incorporates and realleges paragraphs 1 through 17.

32.    Plaintiff engaged in protected EEO activity which included verbal and written requests for reasonable accommodation; opposing discrimination and retaliation in meetings with management; and filing, testifying in and prosecuting and documenting EEO claims for discrimination, retaliation and hostile work environment.

33.    The Defendant was aware of each of the Plaintiff's protected EEO activities.

34.     The aforesaid adverse employment actions; other material adverse actions; as well as other conduct, acts and omissions to Plaintiff's detriment were all taken (or failed/unreasonable delayed to be taken) by administrators and managing and supervisory personnel at Young VAHCS in Bay Pines, Florida in retaliation for the protected EEO activity of the Plaintiff including those set forth above.

35.     As a direct and proximate result of the protected EEO activity, Plaintiff has suffered the adverse employment actions and other material adverse actions. These actions would deter a reasonable employee from engaging in EEO activity.

36.     The Young VAHCS in Bay Pines, Florida has intentionally maintained these retaliatory and unlawful practices to the detriment of its employees.

37.     The Defendant at all relevant times knew or should have known of the retaliatory actions being taken against Plaintiff.

38.     The Defendant failed to take necessary action to prevent or correct the retaliatory actions being taken and, in fact, ratified such conduct.

39.     The Defendant, through the supervisors of the Plaintiff, including Griffin-Hall and others, has engaged in, directed, and/or ratified retaliatory conduct and has frustrated Plaintiff's efforts to obtain relief under Title VII and the Rehabilitation Act.

40.     The Defendant, through acceptance of such conduct, has fostered an attitude among administrators, managers and supervisors at the Young VAHCS that retaliation against employees in order to discourage protected EEO activity is an

acceptable employment practice by administrators, managers and supervisors at the Young VAHCS in Bay Pines, Florida.

41.    Because of the willful actions of the Defendant and its administrators, managers and supervisors, and as a proximate cause thereof, Plaintiff has been and continues to be denied his right to equal employment opportunity in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. and the Rehabilitation Act.

42.    As a result of the foregoing, Plaintiff has been damaged.  Those damages include, loss of pay, loss of a non-hostile working environment; loss of career and professional opportunities; payment of attorneys' fees and legal costs; harm to her professional reputation; adverse disciplinary action; and humiliation, degradation, embarrassment, severe emotional distress and aggravation of her medical conditions. Plaintiff will continue in the future to suffer these damages absent relief from this Court.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT III
## Hostile Work Environment Harassment

43.    Plaintiff sues Defendant, Denis R. McDonough, Secretary of the Department of Veterans Affairs for hostile work environment and harassment based upon disability and retaliation.

44.     Plaintiff incorporates and realleges paragraphs  1 through 17, 20-29, and 32-42.

45.     Plaintiff belongs to the aforesaid protected groups.  She was subjected to unwelcomed harassment.  That harassment was based upon her protected status.  The harassment complained of affected a term, condition and privilege of employment. The Defendant knew or should have known of the harassment and failed to take prompt remedial action.   The aforesaid actions and conduct have created an intolerable hostile work environment and harassment and caused a change in her wages and working conditions.

46.     As a result of the foregoing, Plaintiff has been damaged.  Those damages include, loss of pay, loss of a non-hostile working environment; loss of career and professional opportunities; payment of attorneys' fees and legal costs; harm to her professional reputation; adverse disciplinary action; and humiliation, degradation, embarrassment, severe emotional distress and aggravation of her medical conditions. Plaintiff will continue in the future to suffer these damages absent relief from this Court.

WHEREFORE, Plaintiff requests prospective relief, a judgment for damages, attorneys' fees and costs and such other and further relief as this Court deems just and proper and for a trial by jury on all issues so triable.

## COUNT V
## Injunctive Relief

47.     Plaintiff sues Defendant, Denis R. McDonough, Secretary of the Department of Veterans Affairs for injunctive relief.

48.     Plaintiff incorporates and realleges paragraphs 1 through 17, 20-29, 32-42, and 45-46.

49.     Unless the above practices are enjoined, Plaintiff will suffer irreparable harm.

50.     There is: (1) a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless an injunction issues; (3) the threatened injury to Plaintiff is greater than any damage the proposed injunction may cause the opposing party; and (4) the injunction, if issued, will not disserve the public interest.

51.     Plaintiff requests the Court award her attorneys' fees and costs and enter preliminary and permanent injunctions enjoining the following practices, actions and conduct:

52.     Violating Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791 (Rehabilitation Act) and Section 717 of the Civil Rights Act of 1964, as amended, Title VII or the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.,* 42 U.S.C. 2000e-16 as described above including retaliation against Plaintiff for protected or EEO activity and discrimination based on disability, and

53.     Such other practices, actions or conduct that the court deems appropriate and proper to enjoin.

WHEREFORE, Plaintiff demands trial by jury of all issues so triable and such other and further relief as the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff, Francetta Gilbert, hereby demands a trial by jury on all issues so triable.

Dated:  May 16, 2022.

Respectfully submitted,

*/s/ Meagan A. Culpepper*
Meagan A. Culpepper, Esq.
Florida Bar No. 1008132
Joseph D. Magri, Esq.
Florida Bar No.: 0814490
Merkle & Magri, P.A.
5601 Mariner St., Suite 400
Tampa, FL 33609
Telephone: (813) 281-9000
Fax.: (813) 281-2223
Email: mculpepper@merklemagri.com
           jmagri@merklemagri.com